IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION


DANIEL GOMEZ-DAVALOS            §
                               §
v.                             §        2:12-CV-0084
                               §
UNITED STATES OF AMERICA        §


**REPORT AND RECOMMENDATION**
**TO DENY MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Defendant DANIEL GOMEZ-DAVALOS has filed a Motion to Vacate, Set Aside or

Correct Sentence by a Person in Federal Custody.  For the reasons stated below, the undersigned

Magistrate Judge is of the opinion defendant's claims are without merit and should be DENIED.


I.
FACTUAL AND PROCEDURAL HISTORY

On November 23, 2009, defendant was charged by complaint in the Northern District of

Texas, Amarillo Division, with the felony offense of possession with intent to distribute cocaine in

violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii).  The complaint's supporting affidavit

alleged:

> On November 19, 2009, Texas DPS Trooper Joe Livermore stopped a black 1998
> Nissan pick-up with California plates traveling eastbound on I-40.  Trooper Livermore
> stopped the vehicle for speeding 80 mph over posted 70 mph.  Upon approaching the
> vehicle, Trooper Livermore observed the driver and lone occupant, Daniel
> Gomez-Davalos.
>
> The trooper advised Gomez [that] he had been stopped for speeding.  Trooper Livermore
> noticed signs of nervousness from [ ] Gomez and Gomez admitted to the Trooper that
> Gomez was nervous.  Trooper Livermore asked Gomez where he was coming from and

where he was headed.  Gomez told the Trooper that he was coming from San Diego and was headed to Atlanta, Georgia.  The Trooper asked Gomez who the . . . vehicle belonged to and Gomez first stated that the vehicle belonged to his cousin and then stated that the vehicle belonged to his friend.  Trooper Liver[more] asked Gomez a second time who the vehicle belong[ed] to and Gomez stated [ ] he didn't know who the vehicle belong[ed] to.  Trooper Livermore advised Gomez that he was going to issue Gomez a warning ticket and asked Gomez to go to his patrol car to finish the stop. Gomez exited the vehicle and got in the Trooper's patrol unit.

While Trooper Livermore was issuing and checking Gomez[' s] driving status Trooper Livermore asked Gomez who the vehicle belonged to.  Gomez told the Trooper that the vehicle was bought by Abraham Lopez but is owned by Manuel Pardenilla.  Gomez told the Trooper that Pardenilla is a co-worker.

Trooper Livermore asked Gomez if everything in the vehicle was his and if he claimed responsibility to everything in the vehicle.  The Trooper then asked Gomez if he was carrying anything illegal, like drugs, methamphetamine, cocaine, marijuana or bombs. Gomez said that he was not and then Gomez stated "you can check." Trooper Livermore then advised Gomez that he was issuing him a warning.  At that time Trooper Livermore returned Gomez's drivers license and confirmed with Gomez that he had returned Gomez's drivers license and property.  Once Gomez advised that he had all his property in his possession Trooper Livermore asked Gomez for permission to search the vehicle and its contents.  At that time Gomez gave the Trooper permission to search the vehicle and stated "you can search everything."

As Trooper Livermore began to search the car, he noticed signs of wear and recent removal around quarter panels in the extended cab portion of the vehicle.  The panels and moldings appeared to have been removed multiple times.  Using his flashlight, Trooper Livermore examined the area and saw a plastic wrapped bundle inside a false compartment in the vehicle's quarter panel.  Knowing this method of concealment to be consistent with the smuggling of narcotics, Trooper Livermore placed Gomez into handcuffs.  Trooper Livermore read Gomez his rights in English and Gomez indicated that he understood his rights.

Trooper Livermore with the assistance of the Potter County Sheriffs Department transported Gomez and the vehicle to the DPS office in Amarillo, Texas.  Upon removal of the ext-cab quarter panels utilizing an installed, non-factory trap mechanism, troopers found 22 bundles wrapped in a yellow substance, cellophane and then heat sealed, weighing about 22 kilograms, collectively.  Field tests indicated that the bundles contained cocaine, a Schedule II controlled substance.

On December 9, 2009, defendant was charged by indictment with the same offense.

On February 9, 2010, petitioner pled guilty to the possession with intent to distribute

offense.  Pursuant to a Plea Agreement, defendant acknowledged his plea of guilty was "freely and voluntarily made" and "not the result of force or threats, or of promises apart from those set forth in [the] plea agreement."  Defendant also stated that after thoroughly reviewing all legal and factual aspects of this case with his lawyer, he was fully satisfied with his lawyer's legal representation. Defendant averred he had "received from his lawyer explanations satisfactory to him concerning each paragraph of this plea agreement, each of his rights affected by this agreement, and the alternatives available to him other than entering into this agreement," and that after conferring with his lawyer, concluded it was in his best interest to enter into the plea agreement and plead guilty rather than proceed to trial.  On that same date, defendant confirmed the terms of the Plea Agreement in open court.  After addressing defendant personally and hearing his answers under oath, the court determined defendant's plea was voluntarily made and that defendant had an understanding of the nature of the charge, an understanding of the consequences of his plea, and that the plea was made with defendant's knowledge of any mandatory minimum penalty as well as knowledge of the maximum penalty that could be imposed.  The court accepted defendant's plea and the plea agreement and ordered a Presentence Investigation Report (PSR).

On March 16, 2010, the United States Probation Officer filed the PSR.  The PSR set the base offense level for defendant's possession offense at 34.  At the time the report was prepared, the extent of defendant's debriefing with agents was unknown, therefore, the "safety valve" reduction in USSG § 2D1.1(b)(11) was not applied.  Three (3) offense levels were subtracted due to defendant's acceptance of responsibility, resulting in a total offense level of 31.  Defendant had no prior criminal convictions, resulting in a Criminal History Category of I.  Defendant's Criminal History Category of I and Total Offense Level of 31 resulted in a guideline range of 108 to 135 months imprisonment.

Since the low end of the guideline range was less than the statutorily required minimum sentence of 120 months, the minimum guideline range was increased to 120 months, making the guideline imprisonment range 120 to 135 months.

Although no objections to the PSR were filed, an addendum to the PSR noted defendant had been in custody since November 19, 2009 on the "federal behavior," and that defendant would seek credit for the full pre-sentence time served.

On April 6, 2010, the District Judge conducted a sentencing hearing.  At the hearing, defendant acknowledged he had gone over the PSR with his counsel and that there was nothing in the PSR that was not correct.  Defendant asked the court for forgiveness for having made a bad decision, and defense counsel requested defendant be given credit for all pre-sentence jail time served, whether in state custody or federal custody, and that he be housed in a facility as close to San Diego, California as possible.  The District Judge then sentenced defendant to a term of 120-months imprisonment, the lowest end of the advisory guideline range and the minimum sentence available, and made a recommendation for incarceration placement.  On April 26, 2010, the District Judge filed a Statement of Reasons explaining the 120-month sentence was assessed because it was the minimum sentence allowed, the statutory sentence being 10 years to life.

Defendant did not file a direct appeal challenging his conviction or sentence.  On January 21, 2011, defendant filed a post-judgment pleading in his criminal case requesting permission to file a "successive claim."  On March 8, 2012, defendant was provided a section 2255 form motion and ordered to complete and file the form by April 9, 2012.  Instead of submitting the form motion as ordered, defendant, on April 9, 2012, filed a memorandum in support of a "petition for habeas relief under 28 U.S.C. § 2255."  This pleading initiated a separate civil action challenging defendant's conviction and sentence in his criminal case.  On April 16, 2012, defendant was again ordered, in the criminal cause number, to utilize the section 2255 form motion provided to him, and advised

that the completed form, when filed, would served as an "amended" motion to vacate under section 2255.  On May 14, 2012, defendant filed the "Amended" motion to vacate.  The "Amended" motion to vacate alleged no grounds for relief, but instead requested the court to see the memorandum filed April 9, 2012.  On May 25, 2012, the court entered an order that defendant's January 21, 2011 pleading would be construed as the initial pleading for purposes of limitations under 28 U.S.C. § 2255(f).

On July 18, 2013, the government filed a response in opposition to defendant's April 16, 2012 and May 14, 2012 pleadings.  Defendant did not file a reply to the government's response.

On August 5, 2013, however, defendant filed a "Motion Requesting an Order to Show Cause to the Intended Initial § 2255 Form" wherein he requested the court order the government to file a response to the grounds raised in a section 2255 form motion defendant contended he had submitted to the court in June 2012.[1]  Defendant attached as exhibits to the motion a copy of the 2255 form motion signed June 19, 2012, which defendant purportedly had sent to the court, as well as a copy of a letter dated April 3, 2013 inquiring about the status of that purported June 19, 2012 form motion.[2]  On August 7, 2013, the court entered an order denying defendant's motion to order the government to answer the purported 2255 form motion, noting the motion was never received or filed of record and had only been submitted as an exhibit to the August 5, 2013 motion.  Defendant GOMEZ-DAVALOS has never sought leave to amend or sought any other relief regarding the June 19, 2012 document.

---

[1]The June 19, 2012 section 2255 form motion which was never filed of record included several additional grounds asserting (1) defendant's conviction was based on evidence obtained pursuant to an unlawful detention/arrest; (2) defendant's conviction was based on evidence obtained pursuant to an unconstitutional search/seizure; (3) defendant was denied effective assistance of counsel because counsel did not investigate or put the government's case to test; and (4) defendant's plea was involuntary because counsel told him he would receive the safety valve provision and be sentenced below the 10-year mandatory minimum sentence.

[2]Neither the June 19, 2012 section 2255 form motion, nor the April 3, 2013 correspondence were received or filed in defendant's civil or criminal cause numbers.  These documents were only submitted as exhibits to his August 5, 2013 motion.

## II.
## DEFENDANT'S ALLEGATIONS

In his May 14, 2012 Amended Motion to Vacate, and his April 9, 2012 Memorandum of

points, defendant appears to argue his conviction and sentence are unconstitutional because:

1.      Defendant's guilty plea was involuntary, rendering his waiver of appeal invalid;

2.      Defendant's mandatory minimum sentence constitutes cruel and unusual
        punishment under the 8th Amendment;

3.      The trial court erred in sentencing defendant because it improperly considered
        defendant's relevant conduct in calculating defendant's sentencing guidelines;

4.      The trial court erred in failing to apply the safety-valve provision and
        sentence defendant below the mandatory minimum sentence for the
        offense of conviction;

5.      The case of *Apprendi v. New Jersey* facially invalidated the statues under which
        defendant was convicted; and

6.      Defendant's conviction and/or sentence is unconstitutional under *Apprendi v.
        New Jersey*.

## III.
## STANDARD OF REVIEW

In its July 18, 2013 response to defendant's April 16, 2012 and May 14, 2012 pleadings, the

government accurately sets out, at pages 5-7, the appropriate standard of review for motions brought

under 28 U.S.C. § 2255.  These standards are applicable to this case.

## IV.
## VOLUNTARINESS OF PLEA AND WAIVER OF APPELLATE RIGHTS

Defendant argues his guilty plea was "likely" involuntary because of his "lack of legal

training" and because "constitutionally deficient lawyering prevented [him] from understanding his

plea."  Defendant provides no other details, *viz.*, how his lack of legal training rendered his guilty

plea involuntary when he was represented by counsel, what he misunderstood with regard to his

guilty plea, how such misunderstanding affected his decision to plead guilty, what act or omissions were committed by his attorney, how his attorney's conduct was deficient, or how any alleged deficient conduct by his attorney affected his decision to plead guilty.  In its response, the government accurately analyzes, at pages 7-8, with supporting case law, the conclusory nature of defendant's claims and the insufficiency of such generalized claims in a 2255 proceeding.  The undersigned finds defendant's claims are conclusory and inadequate to establish a constitutional violation with regard to the voluntariness of defendant's guilty plea.  Defendant's claims should be DENIED as conclusory.

Even if the merits of defendant's claims were to be considered, defendant has failed to show his guilty plea was involuntary.  The government's response accurately sets out, at pages 8-10, the relevant case law and constitutional standards governing the voluntariness of a guilty plea, as well as the presumptions of verity and the weight given to plea documents and in-court representations by a defendant.  The record of the guilty plea proceeding reflects defendant stipulated that he had read, reviewed and discussed with his attorney each provision of his plea agreement, that he had discussed his case with his attorney, and that he had conferred with his attorney before coming to the conclusion that pleading guilty was in his best interest.  At rearraignment, in open court, defendant confirmed those stipulations, and the court addressed several provisions of the plea agreement.  Defendant assured the court his decision to plead guilty was informed and freely and voluntarily made.  Defendant has failed to demonstrate his written stipulations and in-court statements should not be accorded a presumption of verity and great evidentiary weight.  Defendant offers nothing other than his self-serving, after-the-fact (and conclusory) allegations that his guilty plea was involuntary.  Defendant fails to demonstrate his guilty plea was involuntary, and defendant's claim of an involuntary plea should be DENIED.

Defendant further argues his waiver of appellate rights was invalid because his guilty plea

was involuntary and unknowing.  This claim is completely frivolous.  Nothing in the record reflects

defendant waived his appellate rights.  Defendant's claims under this ground are without merit and

should be DENIED.


## V.
## CRUEL AND UNUSUAL PUNISHMENT

Defendant appears to argue his 120-month mandatory minimum sentence violates the Eighth

Amendment prohibition against cruel and unusual punishment because the sentence was "grossly

disproportionate to the offense committed."  Defendant cites no authority in support of his claim

that a 10-year sentence for committing the offense of possession, with intent to distribute, five or

more kilograms of cocaine, is so grossly disproportionate as to violate the Eighth Amendment

prohibition against cruel and unusual punishment.  In fact, defendant noted that in general, a

sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the

Eighth Amendment and that only in rare cases may statutorily-condoned punishment exceed the

limits of the Constitution.  Defendant fails to demonstrate that the minimum penalty of ten (10)

years for the offense of possessing a large amount of cocaine (approximately 22 kilograms) violates

the constitutional prohibition against cruel and unusual punishment.  Defendant's claim under this

ground should be DENIED.


## VI.
## SENTENCING ERROR

Defendant appears to argue the trial court's use of his "relevant conduct" in calculating his

sentencing guidelines was "per se unreasonable."  Defendant appears to maintain the "sentence

guideline factors [were] given superior consideration to 18 U.S.C. § 3553(a)" and "led to a sentence

calculated not under 18 U.S.C. § 3553(a), but derived from the guidelines."

A claim alleging a misapplication of the sentencing guidelines is not cognizable on collateral

review.  *United States v. Williamson*, 183 F.3d 358, 462 (5th Cir. 1999).  Further, the PSR did not

attribute any "relevant conduct" to defendant or apply any offense or specific offender characteristic

adjustments to the guideline level beyond the base offense which was calculated based on the

amount of cocaine found in defendant's vehicle.  Lastly, defendant received the minimum sentence

of ten years and was exposed to a sentence of up to life.  Defendant's minimum sentence is neither

cruel or unusual.  Defendant's claim under this ground should be DENIED.

VII.
SAFETY VALVE PROVISION

Defendant argues he "qualifie[d] for the Safety Valve application" under 18 U.S.C. §

3553(f), and that the trial court erred in failing to apply the safety valve provision and sentence him

below the mandatory minimum sentence for the offense of which he was convicted.  This claim of

sentencing error is not cognizable on collateral review because it is neither a claim of constitutional

or jurisdictional magnitude, nor is it a claim that could not have been raised on direct appeal and

which, if condoned, would result in a complete miscarriage of justice.  *See Capua*, 656 F.2d at 1037.

Even if this claim were cognizable in this 2255 proceeding, defendant has not demonstrated

the trial court erred in failing to find defendant qualified for the safety valve reduction under USSG

§ 2D1.1(b)(11).  A defendant may have his base offense level reduced by two levels under §

2D1.1(b)(11) if he meets all five criteria set out in § 5C1.2(a).  The fifth requirement is that, by the

time he is sentenced, he has "truthfully provided to the Government all information and evidence

[he] has concerning the offense or offenses[.]"  A defendant seeking the benefit of an offense level

reduction based on his compliance with § 5C1.2 and § 2D1.1(b)(11) has the burden of proving he

has satisfied the criteria set out in § 5C1.2.  *United States v. Wilson*, 114 F.3d 429, 432 (4th Cir.

1997).  The district court's determination that a defendant has fulfilled the requirements of §

5C1.2(a)(5) is a factual question and if appealed is reviewed for clear error. *Id.*; *United States v. Guerra-Cabrera*, 477 F.3d 1021, 1024-25 (8th Cir. 2007).

The Presentence Report (PSR) in this case stated: "At the time this report was prepared [March 16, 2010], the extent of the defendant's debriefing with agents is unknown.  Therefore, the "safety valve" reduction in USSG § 2D1.1(b)(11) is not applied."  Defendant filed a statement stating he had no objections to the PSR.  At the sentencing hearing, defendant confirmed the PSR did not contain anything incorrect and was "fine."  *Sentencing Hearing*, Tr. 5.  There was no further discussion at the sentencing hearing whether defendant fulfilled the requirements for application of the safety valve provision.

Now, defendant simply states he met "the criteria set forth in Subdivisions 1-5 of Subsection (a) of § 5C1.2" and was "entitled to a decrease in [the] Base Offense Level under attempt or conspiracy" because he "satisfied the debriefing requirement."  Defendant provides no specifics how he satisfied the criteria set out in § 5C1.2.  Moreover, the record is silent as to defendant's fulfillment of the necessary criteria to justify an offense level reduction based on defendant's compliance with § 5C1.2 and § 2D1.1(b)(11).  Defendant has not demonstrated he qualified for the safety valve reduction or that the trial court erred in failing to award the reduction and/or sentence defendant below the minimum mandatory sentence in his criminal case.  Further, defendant has not properly raised, in this 2255 proceeding, a claim of ineffective assistance of counsel for failing to argue defendant qualified for the safety valve provision.[3]

Defendant also argues the court erred in considering subsections (f)(1) and (f)(4) of section 3553 when calculating his advisory guideline range because such subsections, due to their

---

[3]In the purported June 19, 2012 form 2255 motion never filed of record, defendant does assert a general claim of ineffective assistance of counsel and of an involuntary plea based on counsel's assurance that he would receive the benefit of the safety valve provision.  Again, this claim, only included in 2255 form motion attached as an exhibit to another pleading, is not properly before this court as a live pleading.

references to the sentencing guidelines, are unconstitutional under *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) and thus invalid.  This argument is procedurally barred because defendant failed to raise it on direct appeal.  *See United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (*en banc*).  Even if this court were to consider defendant's argument, he cannot show cause or prejudice for the trial court's failure to sever these provisions from section 3553 and not consider such provisions in this case because the Fifth Circuit has held that *Booker* did not invalidate section 3553(f).  *See United States v. Jasso*, 634 F.3d 305, 308-09 (5th Cir. 2011).  Lastly, defendant received the minimum sentence applicable.  Defendant's claims should be DENIED.

## VIII.
### *APPRENDI*

Defendant also contends his conviction and sentence are unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) because *Apprendi* invalidated 21 U.S.C. § 841(a) and (b).  This claim also appears to be procedurally barred but, in any event, is without merit.  The Fifth Circuit has held that *Apprendi* did not invalidate those statutory provisions.  In *United States v. Slaughter*, 238 F.3d 580, 582 (5th Cir. 2000), the Fifth Circuit specifically found there was "nothing" in *Apprendi* to substantiate a finding that 21 U.S.C. §§ 841(a) and (b) are unconstitutional on their face.

Moreover, to the extent defendant argues the type and quantity of the drugs he possessed were unconstitutionally considered in violation of *Apprendi*, defendant's argument is without merit. Defendant's indictment was specific in that it alleged he trafficked five or more kilograms of cocaine.  Defendant pled guilty and admitted he trafficked five or more kilograms of cocaine. Defendant was specifically charged with and admitted to the type and quantity of drugs he possessed, and the trial court's sentence in this case did not violate *Apprendi*.  *See Alleyne v. United*

*States*, 133 S.Ct. 2151 (2013).  Defendant's claim should be DENIED.

IX.
RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed by defendant DANIEL GOMEZ-DAVALOS should be DENIED.

X.
INSTRUCTIONS FOR SERVICE and NOTICE OF RIGHT TO OBJECT

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ___24th___ day of April 2015.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)©), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely

file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).